ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JAN 0 6 2011

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| SECURITES AND EXCHANGE COMMISSION, | : |
| Plaintiff, | : Civil Action No. |
| v. | : |
| STANLEY J. KOWALEWSKI and SJK INVESTMENT MANAGEMENT, LLC, | : |
| Defendants. | : |

*NCMD-1:11MC16*

FILED
FEB 1 1 2011
IN THIS OFFICE
Clerk U. S. District Court
Greensboro, N. C.
By _____

## 1:11-CV-0056

## TCB

## COMPLAINT FOR EMERGENCY INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission ("Commission") files this Complaint and alleges as follows:

1.    This matter involves an on-going offering and investment advisory fraud perpetrated against investors in two hedge funds by Defendants Stanley J. Kowalewski ("Kowalewski") and SJK Investment Management LLC ("SJK"), a Commission registered investment adviser based in Greensboro, North Carolina and wholly owned and controlled by Kowalewski.

2.      Beginning in the summer of 2009 and continuing through to the present, Kowalewski and SJK marketed two "hedge fund of funds" (collectively "the Absolute Return Funds") to various investors, many of whom are pension funds, school endowments, hospitals and non-profit foundations.

3.      In raising investor proceeds for those funds – which ultimately totaled approximately $65 million – Defendants Kowalewski and SJK made various disclosures and representations, including that: (a) "substantially all" of the monies invested in the Absolute Return Funds would be invested in "unaffiliated" underlying hedge funds pursuing complex investment strategies, (b) no single underlying fund would be allocated more than 15% of the Absolute Return Funds' monies, (c) the Funds would be responsible to pay for their "organizational" or start-up expenses along with their specific operation costs, and (d) as compensation for its services, SJK would receive no more than a 1% annual asset management fee and a 10% profits incentive fee.

4.      In August 2009, almost immediately after receiving the first investor proceeds, Defendants began diverting investors' monies to pay their personal and business overhead expenses under the pretense that such expenses were "start-up" expenses for the Absolute Return Funds.

2

5.     Following the end of an audit period in December 2009, Kowalewski and SJK formed a new, undisclosed fund wholly controlled by them, the Special Opportunities Fund, caused the Absolute Return Funds to "invest" a total of $16.5 million in this new fund, and proceeded to use this fund to secretly divert to themselves millions of dollars through various self-dealing transactions, including, having the Special Opportunities Fund: (a) buy Kowalewski's personal home for $2.8 million, almost $1 million more than its 2006 purchase price, (b) purchase a vacation home for Kowalewski for $3.9 million, (c) pay approximately $1 million of Kowalewski and SJK's personal and business expenses, and (d) pay SJK an unfounded $4 million "administration" fee, which Kowalewski then paid himself as a "salary draw." Kowalewski has further stated his intention to have SJK pay him $2 million as "salary" from the Special Opportunities Fund.

6.     As part of and to further perpetuate this scheme, Kowalewski and SJK sent fraudulent monthly account statements to the Investors and/or their representative(s) showing substantial, positive, but illusory, investment returns generated by the "investments" in the Special Opportunities Fund.

7.     By this conduct, Defendants Kowalewski and SJK have engaged, and unless restrained and enjoined by this Court, will continue to engage in acts and

3

practices that constitute and will constitute violations of Section 17(a) of the

Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77e(a)], Section 10(b) of

the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and

Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] and Sections 206(1), 206(2) and

206(4) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §

80b-6(1) (2) and (4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## JURISDICTION AND VENUE

8.     The Commission brings this action pursuant to Sections 20 and 22 of

the Securities Act [15 U.S.C. §§ 77t and 77v] and Sections 21(d) and 21(e) of the

Exchange Act [15 U.S.C. §§ 78u(d) and 78u(e)] and Sections 209 and 214 of the

Advisers Act [15 U.S.C. §§ 80b-9 and 80b-14] , to enjoin the Defendants from

engaging in the transactions, acts, practices, and courses of business alleged in this

complaint, and transactions, acts, practices, and courses of business of similar

purport and object, for civil penalties and for other equitable relief.

9.     This Court has jurisdiction over this action pursuant to Sections 20

and 22 of the Securities Act [15 U.S.C. §§ 77t and 77v], Sections 21(d), 21(e), and

27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa] and Section 214

of the Advisers Act [15 U.S.C. § 80b-14].

Case 1:11-mc-00010-UA   Document 1   Filed 02/11/11   Page 4 of 30

10.    Defendants, directly and indirectly, made use of the mails, the means and instruments of transportation and communication in interstate commerce and the means and instrumentalities of interstate commerce in connection with the transactions, acts, practices, and courses of business alleged in this Complaint.

11.    Venue lies in this Court because certain of the transactions, acts, practices, and courses of business constituting violations of the Securities Act, the Exchange Act and the Advisers Act occurred within this District, including but not limited to, the offer of the sale of securities and fraudulent misrepresentations being made to, as well as fraudulent monthly accounting statements being received by, Absolute Return Funds' investors within this District.

## DEFENDANTS

12.    **SJK Investment Management LLC** ("SJK") is a Delaware limited liability company formed in June 2009 and headquartered in Greensboro, North Carolina.  SJK is a registered investment adviser, describes itself on its website as a "hedge fund of funds manager," and has approximately $75-80 million in total assets under management.   SJK has approximately eleven employees, many of whom consist of Kowalewski's relatives and long-time associates.

5

13.   **Stanley J. Kowalewski** ("Kowalewski") is a resident of Greensboro, North Carolina and the founder, sole owner, CEO and Chief Investment Officer of SJK. For all relevant time periods, Kowalewski has exercised complete control over SJK.

## OTHER RELEVANT ENTITIES

14.   **SJK Absolute Return Fund, LLC** is a Delaware limited liability company and a "fund of funds" formed by Kowalewski in or about June 2009. For all relevant time periods, SJK has served and continues to serve as the managing member of this fund.

15.   **SJK Absolute Return Fund, Ltd.** is a Cayman Islands exempted company, and a "fund of funds" formed by Kowalewski in or about July 2009. For all relevant time periods, SJK has served and continues to serve as the investment adviser of this fund.

16.   **SJK Special Opportunities Fund, LP** is a Delaware limited partnership and fund formed by Kowalewski in January 2010. For all relevant time periods, Kowalewski has served and continues to serve as the managing member of the general partner of this fund and SJK has served and continues to

serve as the investment manager for this fund. The only investors in the Special

Opportunities Fund as of September 30, 2010 are the Absolute Return Funds.

17.   **Investors** refers to those investors – consisting largely of school

endowments, pension funds, hospitals, and non-profit foundations – who

collectively invested approximately $64 million of the $65 million invested in the

Absolute Return Funds, including investing $12.5 million after the formation of

the Special Opportunities Fund in January 2010. Certain of those Investors have

their principal place of business in this District and also contributed a portion of

the $12.5 million invested following the formation of the Special Opportunities

Fund.

## FACTS

### Background and the Establishment of SJK and the Absolute Return Funds

18.   Under a "fund of funds" investment approach, a fund of funds

manager, such as SJK, does not directly invest the monies in its fund in individual

securities, such as stocks or bonds; rather, it invests monies into other investment

funds, often hedge funds or private equity funds, that it has selected. The benefits

of such a strategy may include a broader degree of diversification in investment

7

strategies and greater access to hedge funds and private equity funds which might otherwise be unavailable to investors.

19.    Before forming SJK and the Absolute Return Funds, Kowalewski worked as a "funds of funds" manager with a Washington, D.C.-based Commission registered investment adviser.

20.    In June 2009, Kowalewski left that entity to form his own investment adviser, SJK, to manage and market his own, newly created funds of funds, the Absolute Return Funds.

21.    As SJK's founder, sole owner, CEO and Chief Investment Officer, Kowalewski completely controlled and dominated SJK and was solely responsible for making all significant SJK decisions, including all investment decisions, during all relevant time periods.

22.    Kowalewski formed the Absolute Return Funds as ostensible "hedge funds of funds" that were to employ a "multi-manager and multi-strategy investment approach" by investing in a group of "unaffiliated" hedge funds, each of whom were to utilize sophisticated investment strategies, such as "long-short equity" (buying long equities that are expected to increase in value and selling short equities that are expected to decrease in value) and "merger arbitrage"

8

(simultaneously purchasing stocks of companies involved in anticipated merger).

While the SJK Absolute Return Fund, Ltd. purported to be the "offshore"

counterpart to the SJK Absolute Return Fund, LLC, the two funds' investment

objectives and strategies were to be the same.

23.   Kowalewski and SJK structured the Absolute Return Funds so that

SJK would serve as the managing member of SJK Absolute Return Fund, LLC

and the investment adviser for SJK Absolute Return Fund, Ltd.  As a result of

these positions, as well as Kowalewski's complete ownership and control over

SJK, Kowalewski had and continues to have control and authority over the

Absolute Return Funds and their assets.

### Kowalewski and SJK's Disclosures and Representations to Investors and Potential Investors

24.   Beginning in the summer of 2009 and extending through to the

present, Kowalewski and SJK have marketed the Absolute Return Funds to the

Investors – many of whom had previously invested as clients in the D.C.-based

investment adviser – and/or other potential investors and their representative(s).

25.   Kowalewski has met personally with the Investors, other potential

investors and/or their representative(s) to describe the supposed investment

9

strategies and management structure of the Absolute Return Funds and provided various written materials concerning the Absolute Return Funds, including a private placement memorandum and subscription agreement for the SJK Absolute Return Fund, Ltd., a limited liability company agreement for the SJK Absolute Return Fund, LLC, a copy of SJK's Form ADV filed with the Commission, and a "due diligence questionnaire" (collectively "Offering Materials"). Through these meetings and the Offering Materials, Kowalewski and SJK have made certain disclosures and representations concerning the nature of the management and investment of the funds.

26.    Specifically, Kowalewski and SJK have disclosed and represented to the Investors, other potential investors and/or their representative(s) that the Absolute Return Funds would invest "substantially all" of their assets in underlying funds managed by "unaffiliated" investment managers.

27.    Defendants further disclosed and represented no more than a maximum of 15% would be allocated into any one underlying fund.

28.    Defendants further disclosed and represented that the Absolute Return Funds' assets would be invested according to various sophisticated

10

management strategies, including long/short equity, convertible bond arbitrage, merger arbitrage, capital structure arbitrage and relative value arbitrage.

29.     Defendants further disclosed and represented that the net asset value of the fund would be determined in accordance with generally accepted accounting principles ("GAAP").

30.     Defendants further disclosed and represented that the Absolute Return Funds would be responsible for their own "organizational" expenses in starting the Funds, as well as other expenses relating to their specific operation, such as transaction fees.

31.     Defendants further disclosed and represented that, as compensation for its services in advising those funds, SJK would be paid a total of a 1% annual asset management fee (through a fee of $1/12^{th}$ of one percent of the funds' net asset value on the first business day of each month) and an incentive fee of 10 % of the funds' profits at the end of each fiscal year.

32.     Defendants further disclosed and represented that they would not increase their management or incentive fees without the prior consent of the investors, including making such representation in writing in the limited liability company agreement for SJK Absolute Return Fund, LLC.

11

33.   The Offering Materials omitted and failed to mention that the Absolute Return Funds would be obligated to pay for SJK's normal and routine overhead expenses, such SJK's monthly rent or the salaries of SJK personnel.

34.   The Investment Advisory Agreement between SJK and SJK Absolute Return Fund, Ltd., which is expressly referenced in the private placement memorandum for SJK Absolute Return Fund, Ltd. expressly provided that SJK would pay such expenses, including "salaries and expenses of all personnel", "expenses related to the maintenance of office facilities, including, but not limited to, expenses related to rent, furnishings, and office equipment, and utilities", and "all other expenses incurred by [SJK] in performing its services" for the Absolute Return Funds, subject to that SJK's right of reimbursement for  organizational" or start-up expenses in starting the Funds, as well as other expenses relating to that Absolute Return Fund's specific operation, such as transaction fees.

35.   Additionally, the Offering Materials contain limited disclosures concerning conflicts of interest, with no provisions concerning undisclosed self-dealing transactions, payments by the Absolute Return Funds of personal or overhead expenses, or increases in compensation for Defendants' management and advising of the funds.

12

36.    The Investors invested approximately $64 million in the Absolute

Return Funds between August 2009 and September 2010, including $12.5 million

contributed after the January 2010 formation of the Special Opportunities Fund,

described in greater detail below.

### Kowalewski and SJK Obtain "Reimbursement" of Their Personal and Overhead Expenses from the Absolute Return Funds.

37.    Beginning almost immediately after the formation of the Absolute

Return Funds in 2009 and continuing throughout that year, Kowalewski and SJK

began using the Investors' investment proceeds in the Absolute Return Funds for

their personal and overhead expenses under the pretense of those expenses being

"start-up" expenses for the Absolute Return Funds.

38.    Specifically, Kowalewski and SJK caused the SJK Absolute Return

Fund, Ltd. to reimburse them for tens of thousands of dollars, including: the rental

of beach houses in South Carolina and Florida for Kowalewski's family vacation,

various miscellaneous, personal items, including food purchased at grocery stores,

underwear, diapers, kids meals and magazines, basketball jerseys for the

basketball team that Kowalewski coaches, SJK's monthly office rent, and health

insurance premiums for SJK personnel.

13

39.   Defendants failed and omitted to disclose to the Investors, other
potential investors and/or their representative(s), either at the time of the
investments or at any time thereafter, of this misuse of investor assets.

40.   Rather, to perpetuate the fraud, Defendants sent to certain of the
Investors and/or their representative fraudulent monthly account statements that
incorporated these improper deductions from the assets.

**Kowalewski Establishes His Own Fund, the Special Opportunities Fund, to
Secretly Divert Millions to Himself and SJK from the Absolute Return Funds.**

41.   Almost immediately after the close of the audit period ending
December 31, 2009, Kowalewski formed his own underlying fund in January
2010, the Special Opportunities Fund, structuring the fund so that Defendants
would have complete control and authority over it, with Kowalewski serving as
the managing member of the general partner of the fund and SJK serving as its
investment manager.

42.   Following its formation in January 2010, Kowalewski and SJK
transferred millions of dollars from the Absolute Return Funds to the Special
Opportunities Fund – ultimately totaling $16.5 million – and proceeded to take
millions in Investors' assets through a variety of inappropriate transactions.

14

43.    Specifically, beginning in January 2010, Kowalewski and SJK routinely debited funds from the Special Opportunities Fund's checking account to pay for:  (a) Kowalewski's personal expenses, including groceries, landscaping at his residence, clothing, plane tickets for the basketball teams he coached, and charges to various retailers, including TJ Maxx, Pottery Barn, and Bed Bath and Beyond; and (b) SJK's overhead and operating expenses, including salaries paid to SJK employees and other overhead expenses of the firm (as of September 2010, such expenses totaled approximately $1 million).

44.    In January 2010, Kowalewski and SJK caused the Special Opportunities Fund to make a "loan" of $362,000 to SJK, the first "investment" made by the Special Opportunities Fund.

45.    In February 2010, Kowalewski and SJK caused the Special Opportunities Fund to purchase, without any appraisal,  Kowalewski's personal residence for $2.8 million – a purchase price of almost $1 million more than Kowalewski had paid for it in November 2006 at or near the height of the real estate market –  allowing Kowalewski to pay off the first and second mortgages

15

on the home totaling $2.2 million and personally pocket the remaining $593,703 from the sale.

46.    Kowalewski and SJK subsequently caused the Special Opportunities Fund to lease the home back to Kowalewski for significantly less than the monthly mortgage payments that Kowalewski had been paying.  Kowalewski did not even pay even those rental amounts.

47.    Between April and June 2010, Kowalewski and SJK further caused the Special Opportunities Fund to use $550,000 to purchase a 40 percent interest in CDLD Holdings, LLC, a real estate holding company that owns a partially completed residential subdivision near Greensboro, North Carolina, contrary to the sophisticated investment strategies that Kowalewski and SJK represented in the Offering Materials would be used.

48.    In May 2010, Kowalewski and SJK further caused the Special Opportunities Fund to purchase a personal vacation home for Kowalewski and his family on Pawley's Island, South Carolina, for approximately $3.9 million and spend an additional $100,000 on home improvements thereto.  Kowalewski erected a sign to the home stating "Nothing But Net" and "The Kowalewskis."

16

49.   In June 2010, Kowalewski and SJK further caused the Special

Opportunities Fund to buy from Kowalewski, at inflated prices totaling $1

million, two additional homes where Kowalewski's parents and brother-in-law

resided, allowing Kowalewski to pay off the mortgages on those homes and

personally pocket approximately $250,000 remaining from the sale.

50.   Kowalewski and SJK subsequently caused the Special Opportunities

Fund to allow his relatives to live in those houses on favorable terms.

51.   In September 2010, Kowalewski and SJK caused the Special

Opportunities Fund to spend $250,000 to benefit the private school where

Kowalewski coaches basketball, by purchasing a local Greensboro sports training

franchise (managed by an employee of SJK) and beginning construction of a

gymnasium at the school, with the sports training franchise to be transferred to the

school once construction of the gym was complete.

52.   Finally, in addition to the foregoing improper diversions and

transactions, Kowalewski has stated his intention to pay himself $2 million in

salary in 2011 from the Special Opportunities Fund, as well as make large

17

donations to the private school where he coaches basketball using funds obtained from the Absolute Return Funds via the Special Opportunities Fund.

53.     Kowalewski and SJK purportedly sought to "unwind" certain of these self-dealing transactions. For example, in October, 2010, Kowalewski "repurchased" his homes from the Special Opportunities Fund. However, the method by which he executed this transaction involved a further misappropriation, ultimately resulting in his taking the homes from the Special Opportunity Fund, free and clear of any mortgage obligation, for no consideration.

54.     In October 2010, Kowalewski and SJK used the Special Opportunities Fund to "pay" himself $4 million, by transferring $4 million from one of the Absolute Return Funds to the Special Opportunities Fund, causing the Special Opportunities Fund to transfer $4 million to an SJK checking account as an "administration fee," and caused SJK to write a check to Kowalewski for $4 million for a "salary draw," and Kowalewski subsequently deposit that check into his personal bank account.

18

55. After taking for himself personally $120,000 from that $4 million, Kowalewski then paid the Special Opportunities Fund $3.88 million to "repurchase" the homes.

56. Kowalewski and SJK have not "unwound" many of the self-dealing transactions, including the $4 million purchase of Kowalewski's vacation home, nor repaid the Absolute Return Funds for the various losses and financial damage caused by the "investments" and their unwinding.

57. At no time has Kowalewski or SJK ever disclosed to the Investors, other potential investors and/or their representative(s), including those Investors who invested $12.5 million after the creation of the Special Opportunities Fund, of: (a) even the existence of the Special Opportunities Fund or their complete control over it, (b) the amount "invested" in the Special Opportunity Fund, which exceeded the 15% maximum permitted to be placed in any one fund, (c) the existence or nature of the various diversions and self-dealing transactions, (d) any attempts to "unwind" certain of the transactions, (e) the means by which such "unwinding" was done, or (f) his future intent to take an additional $2 million of the Investors' monies via the Special Opportunities Fund.

19

**Kowalewski and SJK Create Fictitious Investment Returns for the Special Opportunities Fund Which Are Reflected in the Investors' Monthly Account Statements.**

58.    In an effort to conceal the existence and nature of their transactions, conceal their millions in additional compensation and continue to solicit new investments, Kowalewski and SJK created artificially inflated investment returns of the Special Opportunities Fund, including but not limited to: (a) valuing at $10 million the interest in the real estate holding company and the vacation property on Pawley's Island, which had been purchased for approximately $4.5 million, without any appraisal to justify the 122% return achieved over the four months since their purchase; (b) accruing investment returns on the interest in the real estate holding company more than three months **before** making the investment.

59.    Kowalewski and SJK then incorporated those artificially inflated valuations into monthly account statements provided to the Investors and/or their representative(s), which statements did not separately identify the various funds or their respective returns, but rather, aggregated and presented only the total amounts invested and the supposed returns.

20

60.    Kowalewski and SJK continue to actively market and solicit new investors and investments for the Absolute Return Funds.

## COUNT I—FRAUD

### Violations of Section 17(a)(1) of the Securities Act
### [15 U.S.C. § 77q(a)(1)]

61.    Paragraphs 1 through 60 are hereby realleged and are incorporated herein by reference.

62.    Defendants Kowalewski and SJK, in the offer and sale of the securities described herein, by the use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly, employed devices, schemes and artifices to defraud purchasers of such securities, all as more particularly described above.

63.    Defendants Kowalewski and SJK knowingly, intentionally, and/or recklessly engaged in the aforementioned devices, schemes and artifices to defraud.

64.    While engaging in the course of conduct described above, Defendants Kowalewski and SJK acted with scienter, that is, with an intent to deceive, manipulate or defraud or with a severe reckless disregard for the truth.

Case 1:11-mc-00016-UA   Document 1   Filed 02/11/11   Page 21 of 30

65.   By reason of the foregoing, the Defendants Kowalewski and SJK, directly and indirectly, have violated and, unless enjoined, will continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT II—FRAUD

### Violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)]

66.   Paragraphs 1 through 65 are hereby realleged and are incorporated herein by reference.

67.   Defendants Kowalewski and SJK, in the offer and sale of the securities described herein, by use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly:

a.   obtained money and property by means of untrue statements of material fact and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

22

b.      engaged in transactions, practices and courses of business which would and did operate as a fraud and deceit upon the purchasers of such securities, all as more particularly described above.

68.     By reason of the foregoing, Defendants Kowalewski and SJK, directly and indirectly, have violated and, unless enjoined, will continue to violate Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

## COUNT III—FRAUD

### Violations of Section 10(b) of the Exchange Act
### [15 U.S.C. § 78j(b)]and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]

69.     Paragraphs 1 through 68 are hereby realleged and are incorporated herein by reference.

70.     Defendants Kowalewski and SJK, in connection with the purchase and sale of securities described herein, by the use of the means and instrumentalities of interstate commerce and by use of the mails, directly and indirectly:

a.      employed devices, schemes, and artifices to defraud;

b.      made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

23

      c.     engaged in acts, practices, and courses of business which would and did operate as a fraud and deceit upon the purchasers of such securities, all as more particularly described above.

71.    Defendants Kowalewski and SJK knowingly, intentionally, and/or recklessly engaged in the aforementioned devices, schemes and artifices to defraud, made untrue statements of material facts and omitted to state material facts, and engaged in fraudulent acts, practices and courses of business.  In engaging in such conduct, the defendants acted with scienter, that is, with an intent to deceive, manipulate or defraud or with a severe reckless disregard for the truth.

72.    By reason of the foregoing, Defendants, directly and indirectly, have violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## COUNT IV—FRAUD

### Violations of Section 206(1) of the Advisers Act
### [15 U.S.C. § 80b-6(1)]

73.    Paragraphs 1 through 72 are hereby realleged and are incorporated herein by reference.

74.    From June 2009 through the present, Defendants Kowalewski and SJK acting as investment advisers, using the mails and the means and instrumentalities

24

of interstate commerce, directly and indirectly, employed devices, schemes and artifices to defraud one or more advisory clients and/or prospective clients.

75.    Defendants Kowalewski and SJK knowingly, intentionally, and/or recklessly engaged in the aforementioned devices, schemes and artifices to defraud. In engaging in such conduct, Defendants acted with scienter, that is, with intent to deceive, manipulate or defraud or with a severe reckless disregard for the truth.

76.    By reason of the foregoing, Defendants Kowalewski and SJK, directly and indirectly, have violated, and, unless enjoined, Defendants will continue to violate Section 206(1) of the Advisers Act [15 U.S.C. § 80b-6(1)].

## COUNT V—FRAUD

### Violations of Section 206(2) of the Advisers Act
### [15 U.S.C. § 80b-6(2)]

77.    Paragraphs 1 through 76 are hereby realleged and are incorporated herein by reference.

78.    From June 2009 through the present, Defendants Kowalewski and SJK, acting as investment advisers, by the use of the mails and the means and instrumentalities of interstate commerce, directly and indirectly, engaged in transactions, practices, and courses of business which would and did operate as a fraud and deceit on one or more advisory clients and/or prospective clients.

25

79.    By reason of the foregoing, Defendants Kowalewski and SJK, directly and indirectly, have violated and, unless enjoined, will continue to violate Section 206(2) of the Advisers Act [15 U.S.C. § 80b-6(2)]

## COUNT VI—FRAUD

### Violations of Section 206(4) of the Advisers Act
### and Rule 206(4)-8 thereunder
### [15 U.S.C. § 80b-6(4) and 17 C.F.R. § 275.206(4)-8]

80.    Paragraphs 1 through 79 are hereby realleged and are incorporated herein by reference.

81.    From June 2009 through the present,  Defendants Kowalewski and SJK, in connection with the purchase and sale of pooled investment vehicles described herein:

a.    made untrue statements of material facts and/or omitted to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, and

b.    engaged in acts, practices, and courses of business that was fraudulent, deceptive, and/or manipulative, all as more particularly described above.

26

82.     Defendants knowingly, intentionally, and/or recklessly made untrue statements of material facts and omitted to state material facts, and engaged in fraudulent acts, practices and courses of business.  In engaging in such conduct, Defendants acted with scienter, that is, with an intent to deceive, manipulate or defraud or with a severely reckless disregard for the truth.

83.     By reason of the foregoing, Defendants, directly and indirectly, have violated and, unless enjoined, will continue to violate Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully prays for:

### I.

Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure, finding that the defendants named herein committed the violations alleged herein.

### II.

A temporary restraining order, preliminary and permanent injunctions enjoining the Defendants, their officers, agents, servants, employees, and attorneys,

and those persons in active concert or participation with them who receive actual

notice of the order of injunction, by personal service or otherwise, and each of

them, from violating, directly or indirectly Section 17(a) of the Securities Act [15

U.S.C. §§'s 77e(a), 77e(c) and 77q(a)], Section 10(b) of the Exchange Act [15

U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] and Sections

206(1), 206(2) and 206(4) of the Advisers Act [15 U.S.C. 80b-6(1), (2) and (4)] and

Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## III.

An order requiring an accounting of the use of proceeds of the sales of the

securities described in this Complaint and the disgorgement by Defendants of all ill-

gotten gains or unjust enrichment with prejudgment interest, to effect the remedial

purposes of the federal securities laws, and an order freezing the assets, preserving

documents of the Defendants and expediting discovery to preserve the status quo.

28

## V.

An order pursuant to Section 20(d) of the Securities Act [15 U.S.C. 77t(d)],

Section 21(d)(3) of the Exchange Act [15 U.S.C. 78u(d)(3)] and Section 209(e) of

the Advisers Act [15 U.S.C. 80b-9(e)] imposing civil penalties against Defendants.

## VI.

Such other and further relief as this Court may deem just, equitable, and

appropriate in connection with the enforcement of the federal securities laws and for

the protection of investors.

Dated: January 6, 2011

Respectfully submitted,

Paul T. Kim
Senior Trial Counsel
Georgia Bar. No. 418841
Email: kimpau@sec.gov

M. Graham Loomis
Regional Trial Counsel
Georgia Bar No. 457868
Email: loomism@sec.gov

Alex Rue
Senior Trial Counsel
Georgia Bar No. 618960
E-mail: ruea@sec.gov

29

Michael J. Cates
Staff Attorney
Georgia Bar. No. 116356
Email: catesm@sec.gov

COUNSEL FOR PLAINTIFF
Securities and Exchange
  Commission
3475 Lenox Road, N.E.  Suite 500
Atlanta, Georgia 30326-1232
Tel: (404)  842-7600
Fax: (404) 842-7633